AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 18-8414-DLB |
| MARQUIS DONTAVIS FREDERICK, | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED by SP D.C.
OCT 09 2018
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __02/21/2017 - 03/01/2018__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841(a)(1), 841(b)(1)(C)-(D) | Possession With Intent to Distribute Controlled Substances; |
| 18 USC § 924(c)(1)(A); and, | Posession of Firearms in Furtherance of a Drug Trafficking Crime and Carrying a Firearm in Connection with a Drug Trafficking Crime; and |
| 18 USC §§ 922(g)(1), 924(a)(2). | Possession of a Firearm and Ammunition by a Convicted Felon |

This criminal complaint is based on these facts:

PLEASE SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Richard Silva, Task Force Officer, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10-9-2018

_____
*Judge's signature*

City and state: _____

Hon. Dave Lee Brannon, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**
**OF**
**TASK FORCE OFFICER RICHARD SILVA**
**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES**
Case No.: 18-8414-DLB

Your affiant, RICHARD SILVA, first being duly sworn, does hereby depose and state as follows:

### Introduction

1. I have been employed by the Palm Beach County Sheriff's Office since 2004 and I am currently an Agent assigned to the Tactical Unit. Since January 2011, I have also been assigned as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Some of my responsibilities include investigating violations of federal law, including violations of the Gun Control Act (Title 18, United States Code, Chapter 44). During my tenure as a law enforcement officer, your affiant has participated in over fifty investigations, arrests and subsequent debriefings of individuals who were arrested for possessing firearms in furtherance of violent and/or drug trafficking crimes. In addition, while employed by the Palm Beach County Sheriff's Office, I have arrested individuals for various drug violations, and have spoken with and interviewed in excess of 100 drug dealers, drug users, and informants concerning the methods and practices of drug traffickers. I have served as the affiant on at least 20 prior search warrants of cellular telephones utilized by armed drug dealers.

2. Your affiant submits this affidavit in support of a Criminal Complaint and an arrest warrant for Marquis Dontavis FREDERICK. Because this affidavit is being submitted for the limited purpose of obtaining an arrest warrant, it does not contain all the information known regarding this investigation, but rather the facts necessary to establish the requisite probable cause to believe that Marquis Dontavis FREDERICK, committed the following offenses: (1) Possession

With Intent to Distribute a Controlled Substances, in violation of Title 21, United States Code, Sections 841(b)(1)(C) and (b)(1)(D); (2) Possession of Firearms in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c); and, (3) Possession of Firearms and Ammunition by a Convicted Felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

## Facts in Support of Probable Cause

3. On February 21, 2017, members of the United States Marshals Service (USMS) Task Force, Palm Beach County Sheriff's Office (PBSO) Gang and Narcotics Unit, began surveillance on 1502 South N Street, Apt. #1, Lake Worth, Palm Beach County, Southern District of Florida (hereinafter "the subject apartment"). The surveillance was initiated in an attempt to locate Devonte WHITE for the following outstanding state felony warrants: First-degree Murder, Armed Burglary, and Felon in Possession of a Firearm. Surveilling agents identified WHITE as being within the subject apartment.

4. Agents approached the front door of the subject apartment, and conducted a knock and announce. Agents then made contact with multiple occupants at the front door to include Devonte WHITE, who was immediately taken into custody upon the aforementioned active felony warrants. Marquis FREDERICK and three other occupants, hereinafter referred to as "JB," "BA," "RG" were detained on scene. Agents conducted a protective sweep of the subject apartment, and once they determined it was safe, the agents exited the subject apartment and FREDERICK and the other occupants were released from the scene.

5. As PBSO Narcotics Agent Laufer approached the subject apartment, he smelled what he recognized from his training and experience as the odor of raw (that is, unburnt) marijuana emanating from the window-mounted air conditioning unit of the subject apartment.

2

Once Agent Laufer approached the front door of the subject apartment, the odor of marijuana intensified. On the basis of the preceding, and additional investigative facts, Agent Laufer sought and obtained a lawful state search warrant for the address of at 1502 S. N Street, Apt. # 1, Lake Worth, Palm Beach County, Florida.

6. Upon executing the search warrant, agents lifted the cooktop of the white electric range and located the following items:

   a. One (1) Glock, Model: 22, .40, semi-automatic pistol, Serial No. STS638 with one (1) live 40 caliber round headstamped "CCI S&W 40" in the chamber and an attached magazine containing three (3) live 40 caliber rounds also headstamped "CCI S&W 40";

   b. Five (5) 40 caliber rounds bearing the headstamp "Federal S&W 40;"

   c. One (1) Taurus, Model: PT111, Serial No. TJ58451 with one (1) live 9mm round headstamped "Speer 9mm Luger" in the chamber and an attached magazine containing ten (10) 9mm rounds also headstamped "Speer 9mm Luger;" and,

   d. Two (2) 9mm rounds marked "Winchester 9mm Luger."

7. Agents located the following items inside of the subject apartment's kitchen cabinets: a clear bag containing 28 grams of suspected fentanyl (TPW), several empty clear baggies, empty ammo tray, digital scale, empty Glock .45 caliber pistol magazine, a box of Blazer 9mm ammunition with empty ammo tray, additional rounds of ammunition (2 rounds marked "Fiocchi 45 ACP," 2 rounds marked "CCI 45 Auto, and 1 round marked "Federal 45 Auto").

8. Agents located the following items in the master bedroom: drug ledger inside a black backpack, black, Taurus, Model: 24/7 G2C, Serial No. NIT00044 with one (1) live

3

Remington-Peters marked .45 caliber round in the chamber, and an additional ten (10) .45 caliber Remington-Peters .45 rounds in its accompanying magazine.  Three (3) additional live Federal marked rounds of .45 caliber ammunition were located in a clothing basket in the master bedroom closet.

9. Upon searching the bathroom, agents located the following items (as subsequently confirmed by determined by DEA Laboratory analysis): a pink baggy containing 5.7 net grams of suspected marijuana; a pink baggy containing 4.0 grams of suspected fentanyl/cocaine (TPW) in the trash, and a clear baggy containing 5.0 grams of suspected marijuana (TPW) floating in the toilet bowl.

10. Your affiant conducted a criminal record check of FREDERICK and the other identified occupants of the subject apartment, that is, "DW," and "BA." The records check revealed that FREDERICK and the other occupants inside the subject apartment, on February 21, 2017, were convicted felons.

11. On March 6, 2017, PBSO Detective Booth obtained DNA search warrants for samples of DNA from Marquis FREDERICK and the other occupants for comparison to the firearms (Taurus Serial No.TJ58451, Taurus Serial No. NIT00044, Glock Model: 22, Serial No. STS638) recovered on February 21, 2017.

12. On March 8, 2017, PBSO agents met with Marquis FREDERICK and transported him to the PBSO Violent Crimes Division (VCD) in order to execute the DNA search warrant. In a recorded interview, Detective Booth read FREDERICK his constitutional *Miranda* warnings from a PBSO issued Miranda rights card and FREDERICK signed the card indicating that he understood his rights.  Post-*Miranda* FREDERICK confirmed that he was inside the subject apartment on February 21, 2017, when the USMS apprehended his friend "DW".  Detective Booth

explained to FREDERICK that he wished to speak to FREDERICK about items that were located on February 21, 2017, during the search of the subject apartment. FREDERICK explained that his uncle lived in the apartment and the only items that belonged to him (FREDERICK) was his Apple iPhone and his backpack. FREDERICK denied ownership of any of the firearms recovered, but stated that he would not be surprised if his DNA was located on the firearms. Prior to concluding the interview. Detective Booth obtained an oral swab with FREDRERICK's DNA pursuant to the aforementioned court-authorized DNA warrant.

13. In December 2017, Bode Cellmark Forensics, a nationally and internationally DNA testing laboratory, issued a report regarding the analysis of the DNA standards as compared to the swabs taken from the firearms. That report concluded that FREDERICK's DNA was present on samples from the grips, slide, and back sight of the Taurus, Model: PT111, Serial No. TJ58451 that was located under the cooktop of the white electric range during the search warrant on February 21, 2017, at the subject apartment.

14. The report specifically stated that the DNA profile obtained from the grips of the Taurus, Model: PT111, Serial No. TJ58451 (FLP1708-3310-E08) was consistent with a mixture of three or more individuals including a major male contributor, that being Marquis FREDERICK. This major component DNA profile matches the DNA profile obtained from sample Marquis FREDERICK (FLP1708-3310-R15). The probability of randomly selecting an unrelated individual with this DNA profile at 22 of 22 loci tested, was determined to be approximately: 1 in 350 decillion in the US Caucasian population, 1 in 10 nonillion[1] in the US African American population, and 1 in 83 decillion in the US Hispanic population.

---

[1] According to Merriam-Webster's Dictionary, in the United States, a "nonillion" is "a number equal to 1 followed by 30 zeros" and a "decillion" is "a number equal to 1 followed by 33 zeros."

5

15. DNA samples obtained from the other occupants "JB" (FLP1708-3310-R13), "BA" (FLP1708-3310-R14), and "DW" (FLP1708-3310-R16) inside the residence prior to the search warrant being executed on February 21, 2017, were excluded as possible contributors of the major component DNA profile deduced from the sample. Due to the possibility of allelic dropout, no conclusions could be made on the minor alleles present in sample FLP1708-3310-E08.

16. FREDERICK's DNA was also determined to have been present on the slide of the Taurus, Model: PT111, Serial No. TJ58451 that was recovered in the cooktop of the white electric range. The DNA profile obtained from this item is consistent with a mixture of three or more individuals including a major male contributor, Marquis FREDERICK. This major component DNA profile matches the DNA profile obtained from sample FLP1708- 3310-R15. The probability of randomly selecting an unrelated individual with this DNA profile at 20 of 22 loci tested is approximately: 1 in 90 octillion in the US Caucasian population, 1 in 29 septillion in the US African American population and 1 in 90 octillion in the US Hispanic population. The following loci were not used in the statistical calculation due to the possibility of allelic drop out PentaE and D22S1045. DNA samples obtained from the other occupants "JB" (FLP1708-3310-R13), "BA" (FLP1708-3310-R14), and "DW" (FLP1708-3310-R16), were excluded as possible contributors of the major component DNA profile deduced from the sample. Due to the possibility of allelic dropout, no conclusions could be made on the minor alleles present in sample FLP1708-3310-E08.

17. FREDERICK's DNA was further found present on a sample (FLP1708-3310-E11) from the back sight of the Taurus, Model: PT111, Serial No. TJ58451 that was recovered in the cooktop of the white electric range. The DNA profile obtained from the rear sight sample (FLP1708-3310-E11) is consistent with a mixture of three or more individuals with a major

6

mixture component of two individuals including at least one male contributor. Marquis FREDERICK cannot be excluded as a possible contributor to the deduced major mixture DNA profile. The estimate of the proportion of individuals in the general population that would be included as possible donors to the major mixture component at 22 of 22 loci tested is approximately: 1 in 1 quadrillion in the US Caucasian population, 1 in 160 trillion in the US African American population, and 1 in 2 quadrillion in the US Hispanic population. Due to the possibility of allelic dropout, no conclusions can be made on the minor alleles present in sample FLP1708-3310-E11. DNA samples obtained from the other occupants "JB" (FLP1708-3310-R13), "BA" (FLP1708-3310-R14), and "DW" (FLP1708-3310-R16), were excluded as possible contributors of the major component DNA profile deduced from the sample. Due to the possibility of allelic dropout, no conclusions can be made on the minor alleles present in sample FLP1708-3310-E11.

18. On February 13, 2018, Detective Booth obtained an arrest warrant for Marquis FREDERICK for Felon in Possession of a Firearm, PBSO Case No.17-247.

19. On Thursday, March 1, 2018, at approximately 09:30AM, agents from the PBSO Tactical Unit initiated surveillance at 836 East Tiffany Lakes Drive Mangonia Park, Palm Beach County, Southern District of Florida, in an attempt to locate FREDERICK for an outstanding state felony warrant for Felon in Possession of a Firearm.

20. At approximately 09:50 am, PBSO Agent Sean McMichael observed a male later who your affiant shall refer to herein as "SD" enter the carport of 836 East Tiffany Lakes Drive Apt. #3, while carrying a white plastic bag. SD then knocked on the front door, and a few seconds later the door opened, and SD entered the residence. A couple of minutes later, agents observed SD and Marquis FREDERICK exit the apartment. FREDERICK was observed carrying a bright flowered backpack. FREDERICK and SD then walked into the western portion of the carport of

836 East Tiffany Drive. FREDERICK opened the driver's side door of a white Honda Accord, and he sat in the driver's seat, while SD stood next to the vehicle. Agents noticed that the Honda did not have a tag attached to the vehicle. FREDERICK exited the driver's seat and stood next to the vehicle with SD. At this time, agents approached the Honda while FREDERICK was standing in the driver's side doorway while the door was ajar. As FREDERICK's was taken into custody, he was smoking a marijuana cigarette. Agents immediately detected an overwhelming odor of fresh marijuana emanating from the interior of the vehicle. PBSO K9 Agent Corey Zuccaro deployed his certified firearms detection canine and walked around the white Honda in an effort to perform a sniff for the presence of firearms. The canine alerted on the driver's side door. Based on the odor of marijuana, response from the canine, and incident to FREDERICK's arrest, Agent McMichael began searching the white Honda and observed the bright flowered backpack that FREDERICK had been observed carrying minutes eariler on the driver seat of the white Honda. A further search of the backpack yielded a gallon-sized zip-lock style plastic bag, which was approximately half-full of suspected marijuana, which later field-tested positive for marijuana. As Agent McMichael removed the gallon bag of suspected marijuana, he observed a semi-automatic pistol in the bottom of the backpack with an extended magazine inserted into the magazine well. At this point Agent McMichael discontinued the search of the vehicle pending a search warrant.

21. FREDERICK was the only individual observed by agents holding the bright flowered backpack and the only person in the area where the backpack containing the suspect marijuana and firearm were located. FREDERICK was charged with possession of marijuana by state authorities.

22. While on the scene, Detective Booth made contact with the registered owner of the Honda Accord who identified herself as Marquis FREDERICK's mother, hereinafter referred to

as "DR". She explained that she had just purchased the vehicle, but she did not own any of the contents inside of the vehicle.

23. On the basis of the preceding, and additional investigative facts, the white Honda Accord was sealed and towed to the PBSO impound lot. On March 1, 2018, Detective Booth sought and obtained a lawful state search warrant for the white Honda Accord.

24. On March 1, 2018, Marquis FREDERICK was transported to the PBSO Violent Crimes Division and was read FREDERICK his constitutional Miranda warnings from a PBSO issued Miranda rights card and FREDERICK signed the card indicating that he understood his rights. During the video-recorded Post-*Miranda* interview, FREDERICK was informed of the DNA results indicating that his DNA was located on three different areas of the Taurus, Model: PT111, Serial No. TJ58451. Detective Booth asked FREDERICK why his DNA was located on the firearm and he explained that he did not recall touching the firearm. Detective Booth then inquired regarding the marijuana observed on the driver's seat and the firearm observed in the backpack. FREDERICK stated that he was not going to admit to a firearm, but did not deny possessing the bright colored backpack in question.

25. On March 2, 2018, the vehicle search warrant was executed at the PBSO Impound Lot. Detective Booth located 60 grams (TPW) of marijuana in the gallon sized plastic bag from the front driver's seat, which had previously been removed from the bright flowered backpack by Agent McMichael. Detective Booth also located a black, fully loaded, Glock Model 26, 9mm, semi-automatic pistol, Serial No. ELH047 on the front passenger seat. The Glock pistol was loaded with a round in the chamber and had an extended magazine inserted into the magazine well with unknown number rounds. Indices queries determined the pistol had been reported stolen to PBSO on December 29, 2012 (CN: 16-1844).

26. A further search of the aforementioned backpack revealed (1) Oval yellow pill marked with 10/325 and weighed approximately .1 grams, along with a (1) Oval yellow pill marked with T134 and weighed approximately .1 grams. A further search of the vehicle yielded (6) six individually packaged plastic bags containing marijuana (15.0 grams TPW) on the rear seat and a black Apple iPhone, which was located in the center console of the vehicle. Upon removing the case of the Apple iPhone cellular device to place into evidence, Detective Booth discovered a Florida driver's license belonging to Marquis FREDERICK tucked in between the cellular device and the case.

27. Based on your affiants training and experience, he suspected the green leaf substance to be marijuana that was individually packaged in numerous small plastic baggies bags were being reserved for distribution as these types of bags are commonly used as packaging for the sale illegal narcotics. All of the marijuana recovered from the backpack and vehicle was later tested utilizing PBSO-issued test kits, which confirmed that the substance was marijuana.

28. On March 30, 2018, your affiant received information from DNA Labs International regarding the analysis of the DNA standards as compared to the swabs taken from the firearm. In a written report issued by a DNA Analyst from DNA Labs International on May 30, 2018, it was revealed that FREDERICK's DNA was present on a combined sample from the trigger/guard from Glock semi-automatic pistol found in the vehicle on February 13, 2018. The report specifically stated that the DNA profile obtained from the swabs indicates a mixture of at least four individuals with at least one male contributor. Marquis FREDERICK could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from the swabs is approximately 110 trillion times more probable if the sample originated from Marquis FREDERICK and three unknown persons than if it originated from four unknown persons.

Therefore, there is extremely strong support that Marquis FREDERICK and three unknown persons contributed to this DNA profile, rather than four unknown persons.

29. The written report also revealed that FREDERICK's DNA was present on a combined sample from the frame/slide of the Glock pistol. The report stated that the DNA profile obtained from the swabs indicates a mixture of at least three individuals with at least one male contributor. Marquis FREDERICK could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from the swabs is approximately 190 trillion times more probable if the sample originated from Marquis FREDERICK and two unknown persons than if it originated from three unknown persons. Therefore, there is extremely strong support that Marquis FREDERICK and two unknown persons contributed to this DNA profile, rather than three unknown persons.

30. The report states that FREDERICK's DNA was also located on the front sight of the Glock pistol. The DNA profile obtained from the swabs indicates a mixture of at least four individuals with at least one male contributor. Marquis FREDERICK could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from the swabs is approximately 23 quadrillion times more probable if the sample originated from Marquis FREDERICK and three unknown persons than if it originated from four unknown persons. Therefore, there is extremely strong support that Marquis FREDERICK and three unknown persons contributed to this DNA profile, rather than four unknown persons.

31. Your affiant conducted a criminal record check of FREDERICK and determined that he is a convicted felon. Specifically, FREDERICK has been previously convicted of at least the following state offenses, each of which was punishable by imprisonment for a term exceeding one (1) year, that is, a felony:

11

    a. On August 18, 2016, Marquis FREDERICK, was convicted of Fleeing or Attempting to Elude, a 3rd degree felony, in the Circuit Court of the 15th Judicial District in and for Palm Beach County, Florida ,Court Case No .502016CF004186AXXXMB.

    32. On Friday, March 16, 2018, PBSO Detective Chad Booth sought and obtained multiple state search warrants for cellular devices seized during the execution of the search warrant on the Honda Accord. The forensic examination of FREDERICK's Apple iPhone cellular device that contained a Florida driver's license belonging to Marquis FREDERICK tucked in between the cellular device, and the case revealed hundreds of SMS/text messaging conversations between FREDERICK and numerous other individuals. Some of these conversations from the period of February, 2018, through March, 2018. involved FREDERICK's offering Marijuana, Percocet's (commonly referred to as "percs" in street terminology), and Adderall (Amphetamine Salt), for sale to others.

    33. Your affiant further notes that he located a nine-second video recording within the Apple cellular device searched pursuant to a lawful state search warrant, that depicts FREDERICK recording himself while lying on a bed. In the course of viewing said video, your affiant observed what appeared to be a black semi-automatic Glock pistol with an extended magazine protruding from its magazine well, directly behind FEDERICK, as well the buttstock of what appears to be an AR-style rifle partially covered by a pillow. Your affiant notes that he has been issued with a Glock semi-automatic pistol by his employing agency and he is thus extremely familiar with the appearance of the Glock family of firearms. Your affiant further notes that the pistol observed in the aforementioned video appears to be externally very similar – if not identical – to the Glock

Model 26, 9mm, semi-automatic pistol, Serial No. ELH047, recovered by law enforcement from the defendant's possession on March 1-2, 2018, discussed above.

34. On October 4, 2018, your affiant consulted with Resident Agent-in-Charge (RAC) Robert Shirley, of the ATF Office, West Palm Beach, who has received extensive training in the manufacture and commerce of firearm, and has been admitted as an expert witness in the areas of the firearms, and the interstate commerce nexus of firearms and ammunition, on over twenty-five (25) prior occasions in the United States District Court for the Southern District of Florida, and elsewhere.

35. RAC Shirley reviewed the aforementioned video recording, as well as enlarged still images of the video recording located within FREDERICK's cellular device. RAC Shirley determined on the basis of his training, experience, that the black pistol observed in the video and enlarged photos exhibits the same external features and characteristics as that found on variants of the recent generation Glock compact series of semi-automatic pistols, such as Glock Models 26, 27 and 30 which are in calibers 9mm, .40 S&W and 45 ACP, respectively. These features include, but are not limited to, the overall silhouette, color, shape, shape of the bottom of the frame, magazine well and size identification.

36. According to a Drug Enforcement Administration (DEA) Chemistry Report dated September 27, 2018, the two pills recovered from FREDERICK's backpack seized on March 1, 2018, were determined to consist of one (1) counterfeit Percocet pill (that is, a pill which had the external appearance of a Percocet pill) that contained a mixture and substances containing a detectable amount of 06-Monoacetylmorphione, Heroin, Acetaminophen, and Caffeine. The second pill was determined to contain Oxycodone (0.6450g). Both of the pills recovered were determined to contain controlled narcotic substances.

37. On October 5, 2018, your affiant monitored the following discussion between FREDERICK and his mother, hereinafter referred to as "DM" that occurred on March 1, 2018, at 3:11 pm, in an outgoing call from the Palm Beach County Jail while the defendant was in custody following his arrest that same date (your affiant notes that the following is not intended to constitute a verbatim transcript of the entirety of that conversation, but rather a synopsis of the portions of the inmate recording):

| | |
|---|---|
| DM: | I went and cleaned up, I went and cleaned up, and everything is straight you heard me? |
| FREDERICK: | Ya I need you to get me a phone, my phones. |
| DM: | Where? Where they at? They got them? |
| FREDERICK: | Ya I think they got my phones, I got a lot of people owe me money mom; I'm fucked up right now this shit got me in a fucking position. |
| DM: | They will give your phones back when you get out tomorrow, they will give you a bond. |
| FREDERICK: | I hope I get the fuck out, you know there trying to hold me in this bitch. |
| DM: | As soon as they give you a bond baby we are getting you. |

[At approximately 0500 Minutes]:

| | |
|---|---|
| DM: | He says it will be alright because they didn't get nothing off you, they got it out that car you know what I am saying? |
| FREDERICK: | Ya |
| RAWLS: | You know what I'm talking about? |
| FREDERICK: | Cuz they ain't get nan off of me momma, I'm going to bet both of these cases I just have to get the fuck out so I can handle business |
| DM: | Ya ya ya I packed up ya everything you know what I am saying just in case they wanted to come back to my house. |

14

| | | |
|---|---|---|
| FREDERICK: | | I am saying where you took my boy at? My boy, my boy? |
| DM: | | Huh? |
| FREDERICK: | | Where you took my boy I just got at? |
| DM: | | To daddy's – |
| FREDERICK: | | Alright because I need him |
| DM: | | Everything at daddy's, in daddy's closet and daddy knows it's there, you hear me? |

[At approximately 09:43 Minute mark]

| | | |
|---|---|---|
| FREDERICK:<br>DM: | | They ain't give you nothing back yet?<br>Huh |
| FREDERICK: | | When they give you my car back right, They going to give you that book bag back? |
| DM: | | I don't know, he said, he told me, he said, the man that came up with the face mask on he had got my name and stuff and stuff and he would have the car released to me, once they umm once they umm search it, he will release it to me you know what I am saying? [Inaudible] |
| FREDERICK: | | I already know I got me so refer to smoke but um |
| DM: | | Oh god -- |
| FREDERICK: | | Ya Just make sure pops on beat man – |
| DM: | | I got em I got em you know he is already on beat you know your dad is already on beat for you. |

[The phone call ends shortly after]

38.     Based on your affiant's training and experience in narcotics investigations, the term "boy" is common street term amongst drug dealers and drug users for heroin (cocaine, in contrast, is typically referred to as "girl.").

15

39. On September 13, 2018, ATF SA Michael Kelly, an ATF Interstate Commerce Nexus Expert examined photographs of the aforementioned Glock, Model: 22, .40, semi-automatic pistol, Serial No. STS638, Taurus, Model: PT111, Serial No. TJ58451, Taurus, Model: 24/7 G2C, Serial No.NIT00044 and a Glock Model 26, 9mm, semi-automatic pistol, Serial No. ELH047. SA Kelly determined on the basis of his training, experience, and the distinctive manufacturers' markings on said items, that the firearms were manufactured outside the State of Florida, and that therefore, by their subsequent recovery in the State of Florida, such firearms traveled in and affected interstate and/or foreign Commerce.

40. On October 5, 2018, your affiant reviewed the facts, circumstances and photographs of the marijuana recovered from FREDERICK's possession on March 1-2, 2018, with DEA Task Force Officer Rey Paniagua, who has previously been deemed qualified and testified as an expert witness on street level drug distribution in the United States District Court for the Southern District of Florida, TFO Paniagua advised that on the basis of his training and experience, and his observations of the marijuana, its packaging and attendant circumstances, is consistent with a distribution quantity of marijuana rather than mere personal use. TFO Paniagua would further testify that drug dealers commonly possess and carry firearms in furtherance of their drug trafficking activity as "tools of the trade," and keep such weapons in close proximity to protect themselves, their inventory of illegal drugs, to protect themselves from people seeking to rob them and law enforcement.

41. Wherefore, on the basis of the foregoing facts, your affiant submits that probable cause exists to charge the defendant, Marquis Dontavis FREDERICK, with (1) Possession With Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(b)(1)(C) and (b)(1)(D); (2) Possession of a Firearm in Furtherance of a Drug

Trafficking Crime, in violation of Title 18, United States Code, Section 924(c); and, (3) Possession of Firearms and Ammunition by a Convicted Felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
RICHARD SILVA
TASK FORCE OFFICER
BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES

SWORN TO AND SUBSCRIBED BEFORE
ME THIS ___9th___ DAY OF OCTOBER, 2018, AT
WEST PALM BEACH, FLORIDA.

_____
**HON. DAVE LEE BRANNON**
**UNITED STATES MAGISTRATE JUDGE**

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET

Defendant's Name: ____MARQUIS DONTAVIS FREDERICK____

Case No.: ____18-8414-DLB____

### Count # 1

Possession with Intent to Distribute a Controlled Substance
Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C)

**Max. Penalty**: 0-20 years' imprisonment; maximum fine of $1,000,000; minimum 3 year to life term of supervised release; and, a $100.00 special assessment

### Count # 2

Possession with Intent to Distribute a Controlled Substance (Marijuana)
Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), 851

Max. Penalty: 0-10 years' imprisonment; maximum fine of $500,000; minimum 4 year to life term of supervised release; and, a $100.00 special assessment.

### Count # 3

Title 18, United States Code, Section 924(c)(1)(A)
Possession of a Firearm in Furtherance of a Drug Trafficking Crime and Carrying a Firearm in Connection with Drug Trafficking Crime

**Max. Penalty**: 5 year mandatory minimum sentence of imprisonment to maximum life term of imprisonment, consecutive to any penalty imposed upon Counts 1, 2 or 4; maximum fine of $250,000 fine; 0-5 year term of supervised release: and, a $100 special assessment.

### Count # 4

Felon in Possession of Firearm and Ammunition
Title 18, United States Code, Sections 922(g)(1), 924(a)(2)

**Max. Penalty**: 0-10 years' imprisonment; $250,000 fine; 0-3 year term of supervised release; and, a $100.00 special assessment.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-8414-DLB

UNITED STATES OF AMERICA

v.

MARQUIS DONTAVIS FREDERICK

Defendant.
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?     ___ Yes  ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  ___ Yes  ✓ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY
District Court No. A0055228
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:   (561) 820-8711
Fax:  (561) 820-8777
Email: john.mcmillan@usdoj.gov